IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Jackson September 1, 2015

**CAYETANO FLORES v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County
No. 2011-B-1579      Steve R. Dozier, Judge**

_____

**No. M2014-02257-CCA-R3-PC – Filed December 2, 2015**

_____

Petitioner, Cayetano Flores, appeals the denial of his petition for post-conviction relief. He argues that his trial counsel provided ineffective assistance by operating under a conflict of interest, inadequately discussing various aspects of the case and the details of the plea agreement, and failing to file a motion to sever. After a careful review of the record, we affirm the prost-conviction court's denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ROGER A. PAGE, JJ., joined.

Elaine Heard, Nashville, Tennessee, for the appellant, Cayetano Flores.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; and Rachel Sobrero, Special Prosecutor, for the appellee, State of Tennessee.

**OPINION**

*Procedural History*

In a narcotics case involving forty-five codefendants, Petitioner was indicted for (1) one count of conspiracy to sell a controlled substance within a drug-free school zone; (2) three counts of possession of a controlled substance with intent to deliver; (3) three counts of possession of a controlled substance with intent to deliver within a drug-free school zone; and (4) one count of money laundering. On March 8, 2013, Petitioner pled guilty to conspiracy, three counts of possession of a controlled substance with intent to

deliver, and money laundering. The plea agreement provided that Petitioner would be classified as an especially mitigated offender and that all sentences would run concurrently, resulting in an effective sentence of fifteen years with parole eligibility after twenty-percent service.

On March 7, 2014, Petitioner filed a pro se petition for post-conviction relief. After receiving an amended pro se petition, the post-conviction court appointed counsel, who filed another amended petition. An evidentiary hearing was held on October 10, 2014, and the post-conviction court denied relief through a written order entered on October 31, 2014. Petitioner timely filed a notice of appeal.

*Facts*

At the evidentiary hearing, Petitioner testified that he discussed the case with trial counsel during the proceedings in General Sessions court. Trial counsel informed Petitioner that another attorney in his office could represent Petitioner. About a week later, however, trial counsel informed Petitioner that "there was a conflict with Hector Flores," one of the codefendants, and that trial counsel would be personally representing Petitioner, instead of the other attorney in trial counsel's office. Trial counsel did not explain any details of the conflict of interest to Petitioner. After receiving the discovery, Petitioner learned that there was an affidavit proffered from an individual named Joe Williams, whom trial counsel had previously represented. If Petitioner had known the details of the conflict of interest, he would have "fired" trial counsel. Petitioner did not sign a written waiver of the conflict of interest. Petitioner admitted that Joe Williams was not named as a codefendant in Petitioner's case and that he did not know Joe Williams.

According to Petitioner, he only saw trial counsel four times during a period of twenty-eight months, each meeting was at the jail and only lasted between five and ten minutes. Initially, Petitioner and Hector Flores shared a jail cell. Despite the alleged conflict of interest, Hector Flores was present at each meeting with trial counsel. Petitioner did not understand why Hector Flores was present during these meetings, if he had a conflict of interest with trial counsel. Petitioner admitted though that there were about five occasions when Petitioner and trial counsel spoke privately.

When trial counsel discussed the case with Petitioner, he told Petitioner that they would "work something out" because Petitioner and Hector Flores were "attached [at the] hip." Trial counsel did not explain what that meant. Petitioner instructed trial counsel to "separate" him from Hector Flores, but trial counsel told Petitioner that the prosecutor would not allow a severance. Trial counsel's strategy was to reach a plea agreement with the State because Petitioner had been caught "red-handed."

Petitioner claimed that he did not receive all of the discovery. Trial counsel sent Petitioner the discovery on computer CDs and told Petitioner in a letter that he would provide hard copies of the discovery at Petitioner's request but Petitioner would have to pay for the copying costs. Petitioner did not request hard copies from trial counsel, choosing instead to send the CDs to his sister for printing. There were tens of thousands of pages of discovery, most of which Petitioner believed did not pertain to him. Trial counsel told Petitioner that there were two wiretap recordings relevant to his case, but Petitioner only identified one wiretap in the discovery he received from trial counsel.

When trial counsel eventually reached a plea agreement with the State, trial counsel showed Petitioner where to sign the plea petition form, but trial counsel never explained the terms of the plea agreement to Petitioner. Petitioner signed the form because he thought trial counsel was working for his "best interest." During the plea colloquy, Petitioner was "dumbfounded," and he explained, "I didn't know what to expect. I just kept saying 'Yes.'" Trial counsel never explained to Petitioner what the sentencing ranges were for the charged offenses.

Trial counsel testified that, after the arrests in this case, he was contacted about representing Hector Flores. He was also contacted about representing Petitioner. Trial counsel met briefly with Hector Flores and then made a "courtesy" call to the prosecutor about his potential involvement with the case. The prosecutor informed trial counsel that there could have been a conflict of interest if he represented Hector Flores because Joe Williams had identified Hector Flores as being involved with marijuana dealings in a proffer made in a previous case. However, because the Joe Williams proffer did not implicate Petitioner, there was no potential conflict of interest in trial counsel's representation of Petitioner.

Trial counsel represented Joe Williams in 2007 and 2008 in a different case. Trial counsel began representing Petitioner in this case in November of 2010. To trial counsel's knowledge, neither Joe Williams nor Petitioner knew each other. Trial counsel did not get any information during his representation of Joe Williams which related to Petitioner.

After speaking with the prosecutor, trial counsel explained to Petitioner and Hector Flores why he could only represent Petitioner but not Hector Flores. Trial counsel clarified that the other attorney in his office, who ultimately represented Hector Flores, was not one of his law partners but only shared office space with trial counsel. The State submitted a copy of a handwritten document signed by both Petitioner and Hector Flores consenting to their respective representations by trial counsel and the other attorney.

During plea negotiations, the prosecutor said that any settlement in Petitioner's case would benefit from Hector Flores's disclosure of forfeiture assets. Accordingly, trial

counsel had some discussions involving both Petitioner and Hector Flores. However, trial counsel also had several meetings alone with Petitioner. Trial counsel estimated that he met with Petitioner between fifteen and forty times, half of which also involved Hector Flores. These meetings typically were no shorter than forty-five minutes.

Because a favorable plea bargain depended on Hector Flores's cooperation, trial counsel could not resolve Petitioner's case any faster. Petitioner told trial counsel to leverage his willingness to testify against Hector Flores in the plea negotiations. However, the prosecutor was not interested in a proffer from Petitioner because the evidence against Hector Flores was strong and the prosecutor felt that Petitioner was substantially involved in the crimes. Petitioner also provided trial counsel with information about a potential forfeiture asset, a house which belonged to Hector Flores but was titled in Petitioner's name. Trial counsel disclosed the existence of the house to the prosecutor and the drug task force but that information never materialized into any benefit for Petitioner. Eventually, trial counsel secured an alternative plea offer, in the event that Hector Flores chose not to cooperate, but the terms of that offer were less favorable than those of the offer contingent on Hector Flores's cooperation. Hector Flores did not want to cooperate with the State and waited until shortly before trial to disclose forfeiture assets. Petitioner was prepared to take the alternative offer rather than go to trial and was relieved when Hector Flores eventually cooperated.

Trial counsel opined that Petitioner was in "serious peril" of being convicted at trial and of receiving "a fairly long sentence" given "some very strong proof" against Petitioner. Trial counsel's trial strategy would have been to argue that Petitioner was merely a facilitator rather than a conspirator. However, trial counsel believed that the strength of the evidence favored conspiracy over facilitation. Trial counsel would have advised Petitioner not to testify at trial because he knew too much information about the crimes. Before the plea submission, trial counsel went through everything in the plea petition before having Petitioner sign the form.

Trial counsel testified that he discussed with Petitioner "how much time he was facing" for the charges as well as the "chances" of being convicted of lesser included offenses. They discussed the difference between the school zone sentences, with mandatory service, and those that were not. They also talked about the potential for consecutive sentencing. Trial counsel compared Petitioner's potential sentences with Hector Flores's potential sentences. They also talked about the potential benefits of Petitioner's testifying for the State.

Trial counsel agreed that the discovery was voluminous and that most of it was not relevant to Petitioner. However, trial counsel maintained that he reviewed all of the pertinent evidence with Petitioner. It was trial counsel's recollection that Petitioner did

not want any hard copies of the discovery sent to him because he did not want the information to be available in the jail for others to find.

Trial counsel discussed with Petitioner filing a motion for severance but explained that he thought such a motion might adversely impact Petitioner's position with the State and with Hector Flores. Trial counsel also discussed the viability of a motion to suppress the wiretap that was part of the State's case and explained that such a motion was very unlikely to prevail. Trial counsel explained that there was an error with one of the wiretap applications in which law enforcement officers listed Petitioner's name as an alias for Hector Flores because they did not know that those names were for two different individuals. Petitioner was aware of this error "very early" in the case because trial counsel discovered it prior to the preliminary hearing. Trial counsel and Petitioner made a strategic decision together not to file either motion.

Trial counsel testified that he and Petitioner had a positive relationship and that Petitioner never displayed any frustration with trial counsel until after he was denied parole. Because the case had taken so long to be resolved, Petitioner's pre-trial jail credit was considerable, and he became eligible for parole shortly after the guilty plea was entered. Petitioner found the plea agreement quite favorable because he was hopeful about his chances for parole as a nonviolent, first-time offender.

*Analysis*

On appeal, Petitioner argues that the post-conviction court erred in denying post-conviction relief for the following reasons: (1) trial counsel failed to adequately inform Petitioner of a conflict of interest; (2) trial counsel failed to adequately discuss the case with Petitioner; (3) trial counsel failed to seek a severance of Petitioner's trial; (4) trial counsel failed to adequately review the discovery material with Petitioner; and (5) trial counsel failed to adequately advise Petitioner of the range and length of the potential sentences for the charged offenses and did not fully explain the plea agreement with Petitioner.[1] The State argues that the post-conviction court properly denied post-conviction relief because the evidence does not establish that trial counsel provided ineffective assistance. We agree with the State.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations

---

[1] Petitioner raised several other arguments in the proceeding below, but because he has not pursued those on appeal, they are abandoned. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. 2009), *perm. app. denied* (Tenn. Apr. 16, 2010).

by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See Burnett v. State*, 92 S.W.3d 403, 408 (Tenn. 2002). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580. "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). A defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). This Court will not use hindsight to second-guess a reasonable trial strategy, *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994), even if a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting *Goad*, 938 S.W.2d at 369). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. Prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Id.* In the context of a guilty plea, the specific inquiry is whether "there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *Calvert v. State*, 342 S.W.3d 477, 486 (Tenn. 2011) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Whether a petitioner has been denied the effective assistance of counsel presents a mixed question of law and fact. *Burns*, 6 S.W.3d at 461. This Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Henley*, 960 S.W.2d at 579. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Momon*, 18 S.W.3d at 156 (citing *Henley*, 960 S.W.2d at 578). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

"[A] lawyer shall not represent a client if . . . there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer." Tenn. Sup. Ct. R. 8, RPC 1.7(a)(2). In this case, Petitioner has not shown any evidence that trial counsel faced a conflict of interest between his previous representation of Joe Williams and later representation of Petitioner. Neither Petitioner nor trial counsel identified any connection between these two individuals or their criminal cases. Petitioner has not suggested any basis for imputing any potential conflict between trial counsel and Hector Flores to trial counsel's representation of Petitioner simply because Hector Flores was a codefendant in this case. The same goes for Hector Flores's representation by another attorney with whom trial counsel shared office space but did not practice law together as partners. This issue is without merit.

As for Petitioner's claims that trial counsel inadequately discussed the case, the discovery, and the plea agreement with Petitioner, the post-conviction court specifically accredited trial counsel's testimony on these matters. Because the evidence does not

preponderate otherwise, we accept the findings that "[t]rial counsel met with the petitioner numerous times and discussed discovery, the law, the facts, and potential trial strategies" and "went over the plea agreement with the petitioner 'line by line.'" Because there is no evidence that trial counsel acted deficiently in this regard, there is no basis for Petitioner's claim that his guilty plea was entered involuntarily due to the ineffective assistance of counsel. Petitioner is not entitled to relief on these issues.

The post-conviction court also accredited trial counsel's testimony that he advised Petitioner about filing a severance motion but that they made an informed and tactical decision not to file such a motion based on their plea negotiation strategy. Petitioner has failed to prove that trial counsel's conduct in this regard was deficient or prejudicial. Accordingly, Petitioner is not entitled to relief on this issue.

*Conclusion*

Because Petitioner has failed to prove by clear and convincing evidence that he is entitled to post-conviction relief, the decision of the post-conviction court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE